IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | | |
|---|---|---|
| NATHANIEL BARNES, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:03-2296-MBS-BM |
| | ) | |
| v. | ) | |
| | ) | |
| SOUTH CAROLINA | ) | **REPORT AND RECOMMENDATION** |
| DEPARTMENT OF | ) | |
| TRANSPORTATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This action has been filed by the Plaintiff pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq.. Plaintiff, a former employee of the Defendant, alleges that he was discriminated and retaliated against on the basis of his race.

The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on November 2, 2004. After receiving an extension of time, Plaintiff filed a memorandum in opposition to the Defendant's motion on December 1, 2004, and the Defendant filed a reply memorandum on December 16, 2004. Defendant's motion is now before the Court for disposition.[1]

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

1



**Background and Evidence**[2]

Plaintiff, an African-American male, was hired by the Defendant in 1982 as a trades worker at the Defendant's District One Sign Shop.[3]  Plaintiff Deposition, pp. 11-12.  Prior to his employment with the Defendant, Plaintiff had worked briefly at Colite Industries, a commercial sign manufacturer, and as a correctional officer with the South Carolina Department of Corrections. Plaintiff's Deposition, pp. 7-8, 10.  Gene Wise (Caucasian) was also employed at Colite when Plaintiff worked there, and Plaintiff knew Wise as a co-worker. Plaintiff's Deposition, pp. 39-40, 100.

In the early 1990s, Wise, who by that time had left Colite and was employed by the Defendant at the Central Sign Shop, applied for and was selected to fill the position of Central Sign Shop Manager.  The Plaintiff and Jimmy Harrell, a white supervisor in the sign shop, also applied for the manager's position, but were not selected.  Plaintiff filed an EEOC charge alleging that he was not selected because of his race, but following an investigation the EEOC issued a "no-cause" finding. Plaintiff received a right-to-sue notice, but did not bring a lawsuit. Plaintiff's Deposition, pp. 38-39, 41, 43, 97, 111-112.

In 2000, Wise gave Plaintiff a five-day suspension for taking leave without approval. Plaintiff grieved his suspension pursuant to the Defendant's employee grievance procedure and, as a result, the Defendant remitted the suspension to a written reprimand with back pay for the five

---

[2]The facts and evidence are considered and discussed hereinabove in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).

[3]The District One Sign Shop was subsequently re-named the Central Shop. Plaintiff's Deposition, pp. 25, 33-34.



day suspension.  <u>Plaintiff's Deposition</u>, pp. 44-45, 50-52; <u>Plaintiff's Deposition, Defendant's</u> <u>Exhibits 1 and 2</u>.  However, several months later Wise again suspended the Plaintiff for five days when Plaintiff refused to turn off a tape recorder during a meeting.  Plaintiff again grieved the five-day suspension,  and again the Defendant remitted the suspension.  Plaintiff did not claim that either of these suspensions was motivated by race discrimination.  <u>Plaintiff's Deposition</u>, pp. 47, 53, 55, 103, 110-111.

In February 2001, Plaintiff required medical treatment for a right shoulder injury incurred while working on a roller machine at the sign shop.  Plaintiff was advised by his orthopaedist, Dr. James Bethea, that he needed surgery to repair torn ligaments and bone spurs. <u>Plaintiff's Deposition</u>, pp. 48-50.  Plaintiff had surgery on his shoulder in February 2001. <u>Plaintiff's Deposition</u>, p. 50.

On August 24, 2001, Dr. Bethea released Plaintiff to return "to computer work." <u>Plaintiff's Deposition, Defendant's Exhibit 4</u>.  Wise told Plaintiff that he did not have sufficient "computer work" at the sign shop to keep Plaintiff busy, and that he wanted Dr. Bethea's opinion about what other duties Plaintiff could perform.  <u>Plaintiff's Deposition</u>, pp. 60-62; <u>Plaintiff's Deposition, Defendant's Exhibit 5</u>.  Dr. Bethea responded in a "To Whom it May Concern" letter dated September 14, 2001 that he thought Plaintiff could perform all aspects of the job identified by Wise except for driving a truck.  <u>Plaintiff's Deposition</u>, pp. 62-63; <u>Plaintiff's Deposition, Defendant's Exhibit 6</u>.

Plaintiff took Dr. Bethea's note to Wise on September 18, 2001.  <u>Plaintiff's Deposition</u>, p. 63.  At that same time, Plaintiff also informed Wise that he had been diagnosed with diabetes and would need to attend a class at the VA Hospital to learn how to control his disease.

3



Wise told Plaintiff that he would be in communication with the District Office and would call Plaintiff to advise him when he could return to work. Plaintiff's Deposition, p. 64. After consulting with Wanda Prince, the Defendant's Human Resources Coordinator, Wise attempted to reach Plaintiff by phone but was unable to do so as Plaintiff was out of town. Plaintiff's Deposition, pp. 64-65; see also Prince Deposition, pp. 120-124. Wise then mailed a letter to Plaintiff via certified mail on September 26, 2001, which read in relevant part as follows:

> I have attempted to contact you by phone on Wednesday, September 19, 2001, and several times each day through September 24, 2001. In an effort to communicate my expectations, I am writing this letter. I am advising you that I feel that you can return to work and perform the duties indicated by Dr. Bethea. Further, I am willing to work with your schedule in reference to the classes that you mentioned.

> It will be necessary that you contact me upon the receipt of this letter, so that we can establish a return to work date. Further, it will be necessary for you to provide to me a doctor's statement verifying your diagnosis of diabetes and the requirements for attending classes in reference to this condition. I will need to know when these classes are scheduled so that a determination can be made if it will be necessary to adjust your work schedule. I will need your doctor to advise me whether this condition will affect your ability to perform the essential duties of your position with or without restrictions. If with restrictions, are they permanent or temporary? If temporary, for what period of time? Attached is a copy of your position description and a letter to provide to your doctor.

> Finally, in an effort to determine if it will be appropriate to place you on approved leave for the time away from work beginning on September 20, the doctor's statement should indicate that you have been under his care during this time period and indicate when you will be able to return to work.

> Please provide this information to me within fifteen (15) calendar days from receipt of this request. Your failure to provide this information within the stipulated time frames may result in your termination for "willful violations of rules, regulations or policies."

> I am looking forward to your prompt attention and cooperation in this matter.

Plaintiff's Deposition, Defendant's Exhibit 7.



4

Plaintiff apparently received Wise's letter on or about October 3, 2001. <u>Plaintiff's</u> <u>Deposition</u>, p. 68. Plaintiff testified that he took Wise's letter, together with an attachment; <u>see</u> <u>Plaintiff's Deposition, Defendant's Exhibit 8</u>; to Dr. Bethea's office, but that he did not receive a response from Dr. Bethea until November 8, 2001, over a month later. <u>Plaintiff's Deposition</u>, pp. 68-69, 72-73. Plaintiff then took this response to Wise on November 9, 2001 (approximately three weeks past the 15-day time limit Wise had given him). <u>Plaintiff's Deposition</u>, p. 73. However, Wise told him that he was too late and that he had been terminated. <u>Id</u>; and <u>Defendant's Exhibit</u> <u>9</u>.

Following his termination, Plaintiff filed a grievance with the State Employee Grievance Committee pursuant to the State Employee Grievance Procedure Act (S.C.Code Ann. §8-17-310 *et seq*.) Plaintiff also filed an administrative charge of discrimination with the South Carolina Human Affairs Commission (SCHAC)[4] on February 12, 2002, alleging that his termination on November 9, 2001 was due to racial discrimination and retaliation. It is undisputed that while Plaintiff's grievance was pending, Wise was diagnosed with brain cancer and, by the time the grievance was heard before the State Employee Grievance Committee on October 17, 2002, he was too ill to attend. <u>See</u> <u>Defendant's Memorandum in Support of Summary Judgment</u>,

---

[4]As South Carolina is a deferral state, Plaintiff could file his administrative claim with SCHAC, instead of with the Equal Employment Opportunity Commission (EEOC). <u>Nelson v.</u> <u>Lockheed Missiles and Space Co.</u>, No. 97-1430, 1997 WL 727609 at **1 n. 1 (4th Cir. November 24, 1997); <u>E.E.O.C. v. Hansa Products, Inc.</u>, 844 F.2d 191, 192 n. 1 (4th Cir. 1988) (quoting 42 U.S.C. § 2000e-5(e)) ["A deferral state is one 'which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice.'"]; <u>see</u> S.C.Code Ann. § 1-13-90, <u>et. seq.</u>, as amended.



p. 6.[5] The State Employee Grievance Committee issued its Final Decision on November 5, 2002, concluding that, while "[t]he Committee does not disagree with the Department's assessment that [Plaintiff] had not fully complied with all requests made regarding his medical condition []", Plaintiff had "made repeated attempts to return to work and comply with the requests of his supervisor,"[6] and that "even though the information provided [by Plaintiff] may not have been complete, evidence does not support the Department's claim that [Plaintiff] 'totally disregarded' the supervisor's request." Plaintiff Deposition Exhibit 1, pp. 7, 9. Accordingly, the Grievance Committee ruled that the Defendant had "erred in its decision to terminate [Plaintiff] based on willful violations of rules, regulations or policies[]", and ordered him reinstated with full back pay and benefits. Plaintiff Deposition, Plaintiff's Exhibit 1, p. 9.[7]

Plaintiff was reinstated on December 9, 2002, paid back pay for the entire period that he had been terminated, and assigned to the print shop at SCDOT headquarters on Park Street in downtown Columbia at his same pay grade and classification. Plaintiff Deposition, pp. 83-84. However, Plaintiff worked just two days--December 9 and 10, 2002 -- before going out on long-term sick leave. Plaintiff testified that during those two days he worked in the print shop no one harassed him, discriminated against him, or retaliated against him. Plaintiff Deposition, pp. 165-166. While he was out on extended sick leave, and at his physician's recommendation, Plaintiff

---

[5]Wise is now deceased.

[6]The Committee apparently placed great significance on the fact that Wise had separately received a letter from the VA concerning Plaintiff's diabetes within the fifteen (15) day response period set forth in his letter. See Plaintiff's Deposition, Plaintiff's Exhibit 1, p. 5, ¶ M.

[7]While the Grievance Committee determined the punishment of termination was too harsh and ordered Plaintiff reinstated, race was not an issue in the Committee's deliberations, and was not a factor or consideration in the Committee's decision. Plaintiff's Deposition Exhibit 1.

6



applied for disability retirement from the State based on "a bad spinal problem" that caused his left leg to go numb when he stands for a long time, "bad nerves", and "stress[]". <u>Plaintiff Deposition</u>, pp. 14-15, 84-85, 162-164, 166. The South Carolina Retirement System approved Plaintiff's application for disability retirement effective March 3, 2003, and Plaintiff's retirement from the Defendant took effect that day. <u>Plaintiff Deposition</u>, pp. 12-15. Plaintiff testified that he has been continuously unable to work since March 3, 2003 due to his disability, and that he has been drawing disability retirement benefits from the State of South Carolina since that date. <u>Plaintiff Deposition</u>, pp. 13-15, 164, 167.

As noted, following his termination (but prior to his reinstatement), Plaintiff had also filed an administrative charge of discrimination with SCHAC. After receiving a right to sue letter, Plaintiff instituted this action alleging that he had been discriminated and retaliated against, and constructively discharged, because of his race. <u>Plaintiff's Deposition</u>, pp. 111-112; <u>Plaintiff's Deposition, Defendant's Exhibit 12</u>; <u>see</u> <u>Complaint</u>.

<u>**Discussion**</u>

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.



7

# I.

### (Termination Claim)

In his first cause of action, Plaintiff claims that he was terminated on November 9, 2001 because he is an African-American. Plaintiff's termination claim is for disparate treatment, which requires proof of intentional discrimination, either by direct evidence or by the structured procedures set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see also Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981).  Plaintiff has not presented any direct evidence of race discrimination;[8] however, the absence of direct evidence of discrimination is not fatal to Plaintiff's claim, as direct proof of discrimination rarely exists in this type of case. In such a situation, indirect evidence of discrimination may be presented through the McDonnell Douglas framework.[9]

The United States Supreme Court articulated a three-part procedure for analyzing discrimination cases in McDonnell Douglas.  First, the Plaintiff must establish a prima facie case of discrimination.  Once a prima facie case has been established, a rebuttable presumption is

---

[8]Direct evidence of race discrimination is evidence which, if believed, would prove the existence of a fact without any inferences or presumptions. O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 548-549 (4th Cir. 1995), rev'd on other grounds, 517 U.S. 308 (1996);  Black's Law Dictionary, 460 (6th Ed. 1990) (citing State v. McClure, 504 S.W.2d 664, 668 (Mo.Ct.App. 1974); see Williams v. General Motors Corp, 656 F.2d 120, 130 (5th Cir. 1981), cert. denied, 455 U.S. 943 (1982).

[9]Consideration of Plaintiff's claim under the so-called "mixed-motive" analysis is also now allowed even though Plaintiff has presented only circumstantial, or indirect, evidence of discrimination. Hill v. Lockheed Martin Logistics Mgt., Inc., 354 F.3d 277, 284-285 (4th Cir. 2004); see also Mereish v. Walker, 359 F.3d 330, 339-340 (4th Cir. 2004); Machinchick v. PB Power, Inc., 398 F.3d 345, 352 (5th Cir. 2005) [ADEA]. Previously, consideration of a claim under the mixed motive analysis was only proper in direct evidence cases. Here, however, Plaintiff has only argued his claim under the traditional McDonnell Douglas proof scheme.



created that the employer unlawfully discriminated against the Plaintiff.  Second, once this presumption has been established, the burden of production shifts to the employer to show a legitimate, non-discriminatory reason for its actions.  Third, if the employer shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the employer's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the employer were really based on Plaintiff's race. McDonnell Douglas Corp., 411 U.S. at 802-805; Texas Dep't of Community Affairs, 450 U.S. at 252-256; Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234-235 (4th Cir. 1991). Despite these shifting burdens of production, however, the Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout.  Texas Dep't of Community Affairs, 450 U.S. at 252-253; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

**Prima facie case.** In order to establish a prima facie case for his termination claim, Plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for his job and his job performance was satisfactory; (3) he suffered an adverse employment action; and (4) similarly situated employees not in his protected class received more favorable treatment, or there is some other evidence giving rise to an inference of unlawful discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 506-510 (1993); Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994); Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993); Hughes v. Bedsole, 48 F.3d 1376, 1384 (4th Cir. 1995).[10]  It is undisputed that Plaintiff is a member of a protected class, and that

---

[10]The exact standard to be used in establishing a prima facie case is flexible depending on the factual situation and the claim alleged. Ennis v. National Ass'n of Business and Education Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995).

9



Wise terminated his employment on November 9, 2001. Defendant argues, however, that Plaintiff has failed to present evidence sufficient to establish either the second or fourth prong of his prima facie case.

With respect to the second prong, Defendant notes that Plaintiff was required to hold a commercial driver's license (CDL) as part of his job, and that he also worked with and around dangerous machinery throughout the course of his work day. See Plaintiff's Deposition, pp. 27-30, 57-59, 71-72. Defendant argues that Plaintiff had not been cleared to perform these work requirements, and that "[t]he whole point of Mr. Wise's directing [Plaintiff] to provide information from his physician as to what if any limitations [Plaintiff's] recently diagnosed diabetes mellitus would place on his ability to perform his job duties was to determine *whether* [Plaintiff] was qualified medically to perform his job". Defendant argues that this evidence shows that Plaintiff could not meet the qualifications for his job at the time of his termination, and that his inability to perform all of the requirements for his job and his failure to timely provide the requested information from his doctor shows that he was not performing his job satisfactorily.

However, when considering this prong of the prima facie case, the question is not whether Plaintiff had some temporary work restrictions because of a medical condition, or whether the Defendant was justified in requesting his medical information. Rather, how Plaintiff was performing his job *prior* to the event(s) which resulted in his termination is the proper question to consider with regard to this prong of the prima facie case. *Cf.* Brown v. Chicago Transit Authority, No. 97-7041, 1999 WL 495622 at *5 (N.D. Ill. June 28, 1999) [Plaintiff's general job performance, not the specific incident(s) which may have precipitated his termination, is the proper question to consider in determining whether Plaintiff can establish the satisfactory performance element of his



prima facie case]; <u>Crosby v. Federal Signal Corp.</u>, No. 97-4967, 1998 WL 603125 at *5 (N.D.Ill. Sept. 4, 1998)*;* <u>Evans v. Technologies Applications & Serv. Co.</u>, 80 F.3d 954, 960 (4th Cir. 1996). Here, although Plaintiff's work record had not been spotless prior to his going out on medical leave in 2001, the evidence shows that he had been working for the Defendant for almost twenty (20) years, and there is nothing in the record to show that Plaintiff was not qualified for his job or was not generally satisfactorily performing his job, prior to his medical leave and the events leading up to his termination in November, 2001. <u>See</u> <u>also</u>, <u>Plaintiff's Attachment 4</u>, p. 1, ¶ B. This evidence is sufficient for purposes of summary judgment to satisfy the requirements of the second prong of Plaintiff's prima facie case.

   With regard to the fourth prong, Plaintiff contends that the way this matter was handled, and his resulting termination, was because of a racial animus on the part of his boss, Mr. Wise, and as evidence of this animus Plaintiff has identified four (4) white employees who he contends received more favorable treatment than he did. Defendant argues that Plaintiff has failed to show that any of the white employees identified by the Plaintiff, each of whom are discussed herein below, were similarly situated to him or received more favorable treatment.

   First, Plaintiff testified that white employee Floyd Wilson went to the dentist and then stayed out for two days after he had been to the dentist, but was allowed to return to work even though he did not provide a doctor's excuse for the two days he had missed. Plaintiff testified that when Wilson came back to work, Wise just told him "don't do that anymore. That was the end of it." <u>Plaintiff's Deposition</u>, p. 88. Plaintiff testified that he knew Wilson did not provide Wise



with any kind of doctor's excuse because Wilson "told me this out of his own mouth." Id.[11]

Plaintiff also testified that alcoholism was recognized as an illness for which sick leave could be granted, and that there were two instances where white employees were having problems with alcohol which Wise handled in a dramatically different way than the way he handled Plaintiff's employment situation. Plaintiff testified that white employee Wayne Bevelin came to work drunk and that in describing his condition Bevelin used a racial epitaph, but that Wise did nothing in response other than to have another employee take Bevelin home. Plaintiff also testified that the police had to come and pick Bevelin up on the job one time, but that Wise did not terminate Bevelin's employment. Id, pp. 128-129.[12] Plaintiff testified that another white employee, Alex Perrow, also "came to work once drunk and nothing was done to him." Plaintiff testified that Wise "asked other people to do his work." Id, pp. 129-130.

Finally, Plaintiff testified that white employee Lisa Terry got into an argument with Wise, following which "she walked off the job and didn't come back for several months." Plaintiff testified that Wise and another employee (Janis Lifsey) ultimately went to Terry's house and asked her to come back to work. Id, p. 130.

Plaintiff argues that these instances show how Wise held white employees to a different, more lenient, standard than that to which Plaintiff was held. Defendant argues that Wise's conduct is not comparable to these other employees, and that he had also had previous employment

---

[11]Defendant argues that this comment constitutes inadmissible hearsay, and should not be considered by the Court.

[12]However, when Plaintiff was asked whether Wanda Prince terminated Bevelin's employment, he responded "I don't know." Id, p. 129. It is undisputed that Bevelin no longer works for the Defendant.



problems or issues, as documented in the evidence, while no evidence has been provided regarding these other employees, their work records or histories, or even the specifics of the incidents at issue. Defendant specifically argues that Plaintiff has failed in his duty to show that Wise fired him but retained white employees under "apparently similar circumstances." <u>Cook v. CSX Transp 'n Corp.</u>, 988 E.2d 507, 511 (4th Cir. 1993); <u>see</u> <u>Hughes</u>, 48 F.3d at 1384-85; <u>Lucas v. Chicago Transit Authority</u>, 367 F.3d 714, 733 (7th Cir. 2004) (both holding that failure of a plaintiff alleging disparate discipline to show that employees outside the protected class were similarly situated to him in all relevant respects is fatal to his claim). Defendant also argues that even if Wise may not have liked the Plaintiff, considered him a rival, and welcomed the opportunity to get rid of him when he did, this does not constitute race discrimination, and that it is therefore entitled to summary judgment.

        The evidence reflects that Plaintiff was required to have a doctor's excuse before returning to work, and was then fired when this excuse was not timely provided. As part of his letter of September 26, 2001, Wise specifically required Plaintiff to provide a doctor's statement to determine if his having missed work from September 20 through September 26 would be considered approved leave. <u>Plaintiff's Deposition, Defendant's Exhibit 7</u>. Plaintiff testified that Wilson was not required to provide a doctor's excuse when he returned to work two days after a dentist appointment. Plaintiff was also fired for not timely providing a doctor's statement, while Wilson was purportedly never required to provide any statement. With respect to the remaining white employees, even though their circumstances may not be strictly comparable to that of the Plaintiff, Plaintiff argues that the way Wise handled their situations is sufficient to show that his termination occurred under circumstances giving rise to an inference of unlawful discrimination.

13



Plaintiff argues that these white employees worked under Wise and engaged in misconduct or inappropriate behavior arguably more severe than the conduct Plaintiff engaged in (such as coming to work drunk and arguing with a supervisor and then walking off the job), but were not terminated or even disciplined by Wise, while Plaintiff was terminated.

While it is clear that, except possibly with respect to Wilson, the actions of the white employees cited by the Plaintiff were not strictly comparable to his, considering this evidence in the light most favorable to the Plaintiff, and in order to allow for further consideration of Plaintiff's claim, the undersigned finds that this evidence is sufficient to establish Plaintiff's prima facie case for purposes of summary judgment. *Cf.* Frazier v. Dep't of Labor, No. 01-198, 2003 WL 21254424, at *2 (S.D.Ind. March 4, 2003) ["In deciding whether another employee is similarly situated to the plaintiff, the court must consider 'all relevant factors, the number of which depends on the context of the case.'"] (quoting Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002)); see Texas Dep't of Community Affairs, 450 U.S. at 253 [The burden of establishing a prima facie case is not onerous.]; see also Proud v. Stone, 945 F.2d 796, 798 (4th Cir. 1991) [when considering whether a Plaintiff has presented a prima facie case under the McDonnell Douglas proof scheme, a Court should "...resist the temptation to become so entwined in the intricacies of the proof scheme [set out in McDonnell Douglas] that [it] forget[s] that the scheme exists solely to facilitate determination of 'the ultimate question of discrimination vel non'."].

**Legitimate, non-discriminatory reason.** When a Plaintiff establishes a prima facie case, it falls to the Defendant to then set forth a legitimate, nondiscriminatory reason for its actions. Lovelace v. Sherwin Williams Co., 681 F.2d 230, 239 (4th Cir. 1982). Here, the Defendant has presented evidence to show that Plaintiff was terminated for failure to timely provide Wise with the



medical information he requested. <u>Plaintiff's Deposition</u>, p. 73; <u>Defendant's Exhibit 9</u>.

This evidence is sufficient for the Defendant to meet its burden of production to show a legitimate, non-discriminatory reason for its decision to terminate the Plaintiff, and the Court must therefore turn to consideration of the final prong of the <u>McDonnell Douglas</u> analysis. <u>EEOC v. Clay Printing Co.</u>, 955 F.2d 936, 941 (4th Cir. 1991) [ADEA case] [The defendant's burden is only one of production, not of persuasion].

**Pretext.**  Where a Defendant rebuts the employee's inference of discrimination by demonstrating a legitimate, non-discriminatory reason for the employment decision, in order to prevail the Plaintiff/employee must demonstrate by a preponderance of the evidence that the employer's proffered reason is a mere pretext for discriminatory conduct. To make this demonstration, Plaintiff must show that "but for" his employer's intent to discriminate against him because of his race, he would not have suffered the adverse employment action. <u>EEOC</u>, 955 F.2d at 941; <u>Conkwright</u>, 933 F.2d at 234.  "Direct or indirect evidence of discriminatory motive may do, but 'the evidence as a whole . . . must be sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by [race animus].'" <u>LeBlanc v. Great American Insurance Co.</u>, 6 F.3d 836, 843 (1st Cir. 1993)(citing <u>Goldman v. First Nat'l Bank</u>, 985 F.2d 1113, 1117 (1st Cir. 1993)(quoting <u>Connell v. Bank of Boston</u>, 924 F.2d 1169, 1172, n. 3 (1st Cir. 1991), <u>cert.</u> <u>denied</u>, 111 S.Ct. 2828 (1991)); <u>see</u> <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 141-143 (2000).

After careful consideration of the evidence and arguments presented, the undersigned does not find that Plaintiff has presented sufficient evidence of pretext to survive summary judgment on his race discrimination claim.  First, Plaintiff has failed to provide any evidence to

15



show that white employees who engaged in conduct similar to his received more favorable treatment. Floyd Wilson's example (which Defendant correctly notes is largely based on hearsay) only tangentially touches on Plaintiff's situation, while the remaining examples offered by the Plaintiff (which include no dates or even specific testimony as to what actually occurred in each of these events) do not relate to Plaintiff's situation at all. See Silvera v. Orange County School Bd., 244 F.3d 1253, 1259 (11th Cir. 2001) ["[T]o satisfy the similar offenses prong, the comparator's misconduct must be nearly identical to the plaintiff's in order to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."] (internal quotations omitted). The Fourth Circuit requires that the plaintiff in a Title VII disparate discipline case prove that "the specific factual circumstances surrounding [his] [disciplinary infraction], as well as [his] overall performance at th[e] time [of the infraction], were substantially similar to those of the [comparator] whom [he] cites as having received more favorable treatment." Hughes, 48 F.3d at 1385. Plaintiff has submitted no such evidence, having only generally discussed the situations involving these other employees in a few lines of his deposition testimony. Defendant correctly notes in its brief that Plaintiff has failed to support this general testimony with any specifics as to dates, times and circumstances. See Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999) [evidence must show that the quantity and quality of the comparator's alleged misconduct be nearly identical]; Maryland v. Bd. of Regents Div. of Univs. of Fla., 342 F.3d 1281, 1289-1290 (11th Cir. 2003) [comparing length of time both the plaintiff and the comparator exhibited similar performance problems as well as cause of the problems]; Cannon v. Dyncorp., ___F.Supp.2d ____, 2005 WL 1458745 at *6, n. 18 (M.D.Ala. 2005) [Plaintiff must provide evidence from which a court could conclude that employees are similarly situated - material factual



16

disputes sufficient to preclude summary judgment must materialize from evidence, not speculation or conjecture].

Further, Plaintiff has failed to present any evidence sufficient to create a genuine issue of fact that Wise had any racial animus towards the Plaintiff. Defendant points to Plaintiff's own testimony ascribing Wise's animus toward him to the fact that he had competed with Wise for the job that Wise held, that both he and Wise allegedly knew that Plaintiff was more qualified to hold the job that Wise held, and that Wise did not like him personally. Plaintiff's Deposition, pp. 40-44, 91-92, 94. Plaintiff has offered no evidence of any actions by Wise of an overtly racial nature (such as use of racially offensive language or conduct), and conceded that he had no evidence or information to show that Wise had ever given any other reason, other than Plaintiff's failure to timely respond to his letter of September 26, 2001, for Plaintiff's termination. Plaintiff's Deposition, pp. 80-81. Furthermore, the evidence shows that Prince and Paula Hollis, the Defendant's Human Resources Director, were consulted about what action should be taken, and that both concurred in the decision to terminate the Plaintiff. Prince Deposition, pp. 52, 125-130.[13] It is also undisputed that Plaintiff did in fact commit this infraction; he was only reinstated by the Grievance Committee because the Committee did not believe Plaintiff's conduct to have been willful. See Ross v. Communications Satellite Corp., 759 F.2d 355, 366 (4th Cir. 1985)["Title VII serves the laudable goal of protecting employee access to agencies and courts. It does not shield employees from normal sanctions for misconduct"], overruled on other grounds, Price Waterhouse

_____

[13]Hollis is herself an African American. Plaintiff has pointed to no evidence, nor has he offered any argument, to show why Hollis, a fellow African-American, would have discriminated against him because of his race.

17



v. Hopkins, 490 U.S. 228 (1989). Plaintiff also conceded that Wise had recommended him for a 10% salary increase in March 1999, as well as that it was Wanda Prince, not Wise, who recommended that he be suspended for five days as a result of the incident involving the tape recorder. Plaintiff's Deposition, pp. 47, 57. In any event, Plaintiff did not claim that either of his two earlier suspensions was motivated by race discrimination. Plaintiff's Deposition, pp. 110-111. Finally, Plaintiff's claim that Wise terminated him because of his race is further undercut by Plaintiff's own testimony that Wise did not discriminate against the other African-American in the office, Calvin Walker. Plaintiff's Deposition, pp. 92-93, 133-134.

In sum, there is ample evidence in the record to show that Wise did not like the Plaintiff, and vice versa, and that Wise and the Plaintiff certainly had a rocky, even contentious, office relationship. However, in order to maintain this claim, Plaintiff must present credible evidence to show that the Defendant's employment decision was *based on his race*, not because the Defendant was simply unfair or disliked the Plaintiff, or because of other such factors. Jamil v. Secretary Dep't of Defense, 910 F.2d 1203, 1207-1208 (4th Cir. 1990); Holder v. Raleigh, 867 F.2d 823, 828 (4th Cir. 1989); Crowley v. Prince George's County, 890 F.2d 683, 687 (4th Cir. 1989), cert. denied, 111 S.Ct. 101 (1992); McCollum v. Bolger, 794 F.2d 602, 610 (11th Cir. 1986), cert. denied, 479 U.S. 1034 (1987); see generally Moore v. Sears, Roebuck & Co., 683 F.2d 1321, 1323, n. 4 (11th Cir. 1982); Jones v. Orleans Parish School Board, 679 F.2d 32, 38 (5th Cir. 1982), modified on other grounds, 688 F.2d 342 (5th Cir. 1982), cert. denied, 461 U.S. 951 (1983); North Carolina Dep't of Corrections v. Gibson, 301 S.E.2d 78, 85 (N.C. 1983); St. Mary's Honor Ctr. v. Hicks, supra. Plaintiff has failed to present such evidence.

In Hawkins v. Pepsico, Inc., 203 F.3d 274 (4th Cir. 2000), the Fourth Circuit Court



of Appeals held that courts must not "transmute … ordinary workplace disagreements between individuals of different races into actionable race discrimination[ ]" where the plaintiff "has shown nothing more than a difference of opinion and personality conflict with h[is] supervisor." Id., at 276. In each case, "legally sufficient evidence" that adverse employment actions were more likely than not motivated by race (or some other factor prohibited by Title VII), not by personal antipathy or resentment, is required to withstand summary judgment in a Title VII disparate treatment case. Id., at 282. The Plaintiff has failed to provide such evidence in this case.    Therefore, the Defendant's motion for summary judgment on Plaintiff's claim that he was terminated in November 2001 because of his race should be granted.

## II.

### (Retaliation Claim)

In his second cause of action, Plaintiff alleges that he was retaliated against after he complained about his working conditions in his grievances (2000 and 2002) and to various individuals. Section 704(a) of Title VII, 42 U.S.C. § 2000(e)-3(a)[setting forth the standard for a retaliation claim], provides as follows:

> It shall be an unlawful practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicants for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Retaliation cases under Title VII are subject to the same requirements of proof as are applicable



19

to disparate treatment claims.  <u>Ross v. Communications Satellite Corp.</u>, 759 F.2d 355, 365 (4th Cir. 1985) <u>overruled on other grounds</u>, <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989); <u>see also</u> <u>Williams v. Cerberonics, Inc.</u>, 871 F.2d 452, 457 (4th Cir. 1989).  "The employee is initially required to establish a prima facie case of retaliation by a preponderance of the evidence.  Such a prima facie case consists of three elements:  (1) the employee engaged in protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse action."  <u>Id.</u>; <u>Munday  v. Waste Management of North America, Inc.</u>, 126 F.3d 239, 242 (4th Cir. 1997).  Once a prima facie case has been presented, the Defendant employer has the burden of producing a legitimate, non-discriminatory reason for its actions.  If the employer can produce a legitimate, non-discriminatory reason for its actions, the employee must demonstrate that the Defendant's proffered reason is pretextural.  <u>Id.</u>

In his brief, Plaintiff not only argues that he was terminated in retaliation for having complained about racial discrimination (which is also the claim set forth in Plaintiff's 2002 EEOC/SCHAC charge), but also argues that he was retaliated against by being subjected to a hostile work environment and by being assigned to a less desirable position after the Grievance Committee overturned his termination.  Defendant argues that these latter two claims should not be considered by this Court because Plaintiff did not administratively exhaust his remedies with respect to these claims.  The undersigned agrees, at least with respect to Plaintiff's hostile work environment claim.

It is clear in the law that "[b]efore filing suit under Title VII, a plaintiff must exhaust [his] administrative remedies by bringing a charge with the EEOC . . . .," and that "[a] plaintiff's EEOC charge defines the scope of [his] subsequent right to institute a civil suit." <u>Smith v. First Union</u>



Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000). Plaintiff's formal administrative charge only claimed that Plaintiff was the victim of unlawful retaliation due to his termination; Plaintiff's Deposition Defendant's Exhibit 12; and Plaintiff has presented no evidence to show that he alleged a hostile work environment claim in his administrative filings, or that any such claim was ever considered or investigated by SCHAC or the EEOC.  Therefore, wince Plaintiff failed to properly exhaust his administrative remedies with regard to his retaliation claim based on a racially hostile work environment, this claim is barred from consideration by this Court. Tran v. Standard Motor Products, Inc., 10 F.Supp.2d 1199, 1208 (D.Kan. 1998); Watson v. Southeastern Pennsylvania Transportation Authority, No. 96-1002, 1997 WL 560181 at *7 (E.D.Penn. Aug. 28, 1997);   see e.g., Taylor v. Virginia Union Univ., 193 F.3d 219, 239 (4th Cir. 1999)(en banc)[where charge alleged only denial of promotion and constructive discharge based on sex, plaintiff could not maintain claim for sexual harassment]; Evans v. Technologies Applications & Service Co., 80 F.3d 954, 962-63 (4th Cir. 1996)[where charge alleged only denial of promotion due to sex, plaintiff could not litigate claim of sexual harassment as it was outside the scope of her charge]; Ritter v. Mount St. Mary's College, 814 F.2d 986, 993 (4th Cir. 1987)[where charge of discrimination alleged only discriminatory denial of tenure, plaintiff could not litigate claims of systemic discrimination or other disparate treatment claims].  Plaintiff's retaliation claim based on a hostile work environment should therefore be dismissed. Marshall v. Federal Exp. Corp., 130 F.3d 1095, 1098 (D.C.Cir. 1997) ["[A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to timely file the EEOC charge."] (quoting Schnellbaecher v. Baskin Clothing Co., 887 F.2d 124, 127 (7th Cir. 1989)); Smith, 202 F.3d at 247



[EEOC charge "defines the scope of [a plaintiff's] subsequent right to institute a civil suit"]; Davis v. North Carolina Dep't of Corrections, 48 F.3d 134, 136-137 (4th Cir. 1995) [Federal Court can assume jurisdiction over a Title VII claim only after the claimant has complied with the required administrative procedures]; Sloop v. Memorial Mission Hosp., Inc., 198 F.3d 147, 148 (4th Cir. 1999) [a Title VII claimant must first exhaust administrative remedies before filing a claim in federal court].

        **1) Prima facie case.** With regard to Plaintiff's "less desirable position" claim, Plaintiff satisfies the first prong of his retaliation prima facie case since he engaged in the protected activity of filing his administrative charge in 2002. Plaintiff alleges that when he later returned to work after his termination was overturned by the Grievance Committee, he was given a less desirable position, which was effectively a demotion, and that this was retaliation for his having filed the administrative charge with SCHAC. As previously noted, Defendant argues that Plaintiff failed to exhaust his administrative remedies with respect to this claim because he did not file an EEOC charge challenging his job placement after he returned to work.  However, although a demotion is a separate and distinct act which ordinarily requires its own separate charge; *cf.* Amtrak v. Abner Morgan, Jr., 536 U.S. 101, 117 (2002) [finding that "discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.  Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'," and prior discrete discriminatory acts which are not filed within the 300 day time limit "are untimely filed and no longer actionable."]; the Fourth Circuit has held that the filing of a separate administrative  retaliation charge is not always a prerequisite to a lawsuit claiming retaliation for filing an initial charge of discrimination. See Nealon v. Stone, 958



22

F.2d 584, 590 (4th Cir. 1992)[Adopting the position that a separate administrative charge is not a prerequisite to a suit complaining about retaliation for filing the first charge.]; <u>Lauer v. Schewel Furniture Co. Inc.</u>, No. 03-1043, 84 Fed.Appx. 323, 328 (4th Cir. Jan. 5, 2004) ["We have previously held that a retaliation claim relates back to the original charge of discrimination, such that 'a plaintiff may raise the retaliation claim for the first time in federal court.'"](quoting <u>Nealon</u>, 958 F.2d at 590); <u>Burke v. AT&T Technical Servs. Co., Inc.</u>, 55 F.Supp.2d 432, 437(E.D.Va. 1999)[The rule that a Plaintiff is not required to first file an EEOC charge before bringing it to the Court "applies to all retaliation claims that arise after a Plaintiff has filed an administrative charge with the EEOC because such retaliation claims by definition grow out of the particular discrimination charges filed with the EEOC."] Therefore, the undersigned does not find that this claim is procedurally barred from consideration by this Court.

However, even if Plaintiff's "demotion" claim is not procedurally barred, Defendant correctly points out that Plaintiff's "transfer" or "demotion" (as Plaintiff terms it) to the position of customer service representative was not an "adverse employment action" for purposes of establishing a retaliation claim under the applicable caselaw, since it is undisputed that Plaintiff retained the same job title and salary. See <u>Kocsis v. Multi-Care Management, Inc.</u>, 97 F.3d 876, 887 (6th Cir. 1996) [demotion without change in pay, benefits, duties, or prestige insufficient to constitute an adverse employment action]; <u>Harlston v. McDonnell Douglas Corp.</u>, 37 F.3d 379, 382 (8th Cir. 1994) [reassignment to a more inconvenient job insufficient]; <u>Spring v. Sheboygan Area School District</u>, 865 F.2d 883, 885 (7th Cir. 1989) [lateral reassignment not adverse employment action]. Plaintiff offers only conclusory allegations and speculation about how this job placement could have adversely affected him in the future; see <u>Plaintiff's Deposition</u>, p. 161; and



has presented no evidence to counter Defendant's evidence that his reassignment following his

reinstatement by the State Employee Grievance Committee was nothing more than a lateral transfer.

The Fourth Circuit has stated,

> [A]n employee's dissatisfaction with this or that aspect of work does not mean an
> employer has committed an actionable adverse action.  And speculation about the
> future adverse consequences of a reassignment may not rise to the level of a genuine
> dispute….The mere fact that a new job assignment is less appealing to the
> employee…does not constitute adverse employment action.   A reassignment can
> only form the basis of a valid Title VII claim if the Plaintiff can show that the
> reassignment had some significant detrimental effect. [A]bsent any decrease in
> compensation, job title, level of responsibility, or opportunity for promotion,
> reassignment to a new position commensurate with one's salary level does not
> constitute an adverse employment action even if the job does cause some modest
> stress not present in the old position.

 James v. Booz-Allen&Hamilton, Inc., 368 F.3d 371, 376-377 (4th Cir. 2004)(internal citations

and quotations omitted).   Therefore, even if Plaintiff's retaliation claim with regard to his alleged

demotion is properly before the Court, this claim is subject to dismissal because Plaintiff has not

shown that he was subjected to an adverse employment action.

Finally, Plaintiff also claims that his termination was unlawful retaliation because

it was due to his having continually filed grievances with the Grievance Committee and complaints

with the EEOC.  See Plaintiff's Memorandum in Opposition, p. 7.  However, with regard to the

grievances Plaintiff filed under the state employee grievance process, Plaintiff concedes that he did

not complain of or even raise the issue of racial discrimination in any of these grievances.

Plaintiff's Deposition, pp. 103-104, 138-141; Prince Deposition, p. 52.  Therefore, his having filed

and pursued those grievances does not constitute "protected activity" necessary to support a claim

of retaliation under Title VII.  See Barber v. CSX Distribution Servs., 68 F.3d 694, 701-702 (3d

Cir. 1995); Sitar v. Indiana Dep't of Transportation, 344 F.3d 720, 727-728 (7th Cir. 2003);



Richardson v. Richland County School Dist. One, 52 Fed.Appx. 615, 617 (4th Cir. 2002).

With respect to Plaintiff's EEOC or SCHAC filings, Defendant does not contest that the EEOC charge Plaintiff filed in 1993 challenging the selection of Wise as manager of the Central Sign Shop constitutes protected activity.[14] See Defendant's Reply Memorandum, p. 6. Plaintiff also testified that he personally complained to Wise that he believed Wise was discriminating against him on the basis of his race in early 1993, when Wise chose Clyde Shumpert for a promotion over the Plaintiff, and that he had renewed this complaint with Wise as recently as February, 2001. Plaintiff's Deposition, pp. 90, 93. This conduct also constitutes protected activity.[15] It is further uncontested that Plaintiff's termination was an adverse employment action. Therefore, with regard to Plaintiff's termination, Plaintiff has established the first two prongs of his retaliation prima facie case.

However, Defendant argues that Plaintiff cannot meet the third prong of his prima facie case, as he has failed to present evidence sufficient to show a causal connection between his

_____

[14]Plaintiff's other EEOC charge was not filed until February 12, 2002, after his termination, and was contesting his termination. Plaintiff's Deposition, pp. 111-112; Deposition Exhibit 12. Therefore, that charge obviously could not have caused Plaintiff's termination. See Hooven-Lewis, 249 F.3d. at 274; Hindman v. Greenville Hospital Systems, 947 F.Supp. 215, 224 (D.S.C.), [protected activity must precede alleged retaliatory conduct], aff'd, 133 F.3d 915 (4th Cir. 1997).

[15]There is a distinction between retaliation claims that fall under the "opposition clause," and those that fall under the "participation clause." The participation clause provides protection for an employee filing a claim with the EEOC. Laughlin v. Metropolitan Washington Airports Authority, 952 F.Supp. 1129, 1133 (E.D.Va. 1997), aff'd, 149 F.3d 253 (4th Cir. 1998). The opposition clause encompasses informal protests, such as voicing complaints to employers or using an employer's grievance procedures. Armstrong v. Index Journal Co., 647 F.2d 441, 448 (4th Cir. 1981). Plaintiff's retaliation claim in the case at Bar falls under both of these clauses, because it arises out of Plaintiff voicing complaints to his employer, and also out of his having filed an EEOC claim. See Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1313 (6th Cir. 1989); Morris v. Boston Edison Co., 942 F.Supp. 65, 71 (D.Mass. 1996).



having engaged in protected activity and the subsequent adverse employment action taken against him.  Specifically, Defendant  argues that the significant passage of time between Plaintiff's protected activity and the adverse employment action defeats any claim of a casual connection, and that Plaintiff has also presented no other evidence to connect these events.

While temporal proximity between a plaintiff engaging in protected activity and an adverse employment action may be sufficient to establish causation, since seven (7) years had elapsed between Plaintiff's EEOC charge in 1993 and his termination in November 2001, any correlation between these events based on temporal proximity cannot be drawn.[16]  Defendant also argues that too much time had elapsed between Plaintiff's conversation with  Wise in February, 2001 and his termination in November 2001 to establish causation. See Hooven-Lewis v. Caldera, 249 F.3d 259, 278 (4th Cir. 2001) ["A six month time lag is sufficient to negate any inference of causation."].  Some courts have, however, considered such shorter time spans as being sufficient to establish causation. Cf. Gordon v. Southern Bells, Inc., 67 F.Supp.2d 966, 988 (S.D.Ind. 1999)["A short time span between protected activity and an adverse employment action may be sufficient to prove a causal connection between the two events. . . . A close temporal connection between the two events is generally enough to satisfy the third element of the prima facie

---

[16]While Plaintiff also cited some letters or contacts he had with several officials or politicians as being protected activity, all but one of these contacts occurred in 1994 or earlier. Plaintiff's Deposition, pp. 101, 109 (references a complaint to U.S. Representative James Clyburn on June 10, 1994), pp. 102-103, 109 (references a letter to Senator Kay Patterson in 1992 or 1993), pp. 107-109 (references a complaint to Highway Commissioner Charles Brooks in 1993). See also, Complaint, ¶ 15. The only one of these contacts to occur after 1994 was a letter Plaintiff sent to the late Senator Strom Thurmond on January 17, 2002.  Plaintiff's Deposition, Plaintiff's Exhibit 3.  This, of course, was after he had already been terminated. Hindman, 947 F.Supp. At 224 [protected activity must precede alleged retaliatory conduct].



case."];see also Texas Dep't of Community Affairs, 450 U.S. at 253 [the burden of establishing a prima facie case is not onerous]; Proud, 945 F.2d at 798.

Nevertheless, even assuming establishment of a prima facie case, Plaintiff has still failed to otherwise present any evidence to show pretext. As has previously been noted, Plaintiff has presented no evidence of a racial animus on the part of Wise, or to show that race was the reason Wise terminated Plaintiff in November 2001. See discussion, supra. Similarly, Plaintiff only speculates that Wise's actions may have been based on a retaliatory motive. Under the applicable caselaw, the mere fact that Plaintiff engaged in a protected activity, and later suffered an adverse employment action, is not in and of itself sufficient to establish that the second action was in retaliation for the first. Cecilino v. Allstate Ins. Co., 908 F.Supp. 519, 532 (N.D. Ill. 1995) [a simple showing that an adverse action occurred after a complaint of discrimination "is not enough to make out a prima facie case of retaliation, let alone survive a motion for summary judgment"]. At summary judgment, the non-moving party has an obligation to present evidence to save his or her allegations from the status of speculation, and must respond with specific facts showing a genuine issue for trial. Rule 56, Fed.R.Civ.P.; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Gairola v. Virginia Dep't of General Services, 753 F.2d 1281, 1288, n. 4 (4th Cir. 1985). Plaintiff has failed to do so. Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) [A party opposing summary judgment "cannot create a general issue of fact through mere speculation or by the building of one inference upon another."]; cf. Geisler v. Folsom, 735 F.2d 991, 994-996 (6th Cir. 1984) [no adverse employment action where evidence failed to establish any more than bad relations between plaintiff and supervisor].

Therefore, Plaintiff's retaliation claim should be dismissed.



## III.

In his final claim, Plaintiff alleges that he was constructively discharged as a result of his lateral transfer from the Central Sign Shop to Headquarters Print Shop in December 2002, following his reinstatement by the State Employee Grievance Committee. Defendant argues that Plaintiff's constructive discharge claim is barred from consideration by this Court because Plaintiff has "never filed a charge of discrimination about either his transfer/reassignment to the print shop or his alleged constructive discharge and since the time for doing so has long since passed, he cannot litigate any claim concerning either of these discrete acts." Defendant's Memorandum in Support of Summary Judgment, p. 31. Plaintiff does not dispute that he did not file a charge about his transfer/reassignment, nor does he argue that he is not now time barred from doing so. Instead, Plaintiff argues that his transfer/reassignment was a demotion and part of a continuing violation.

However, even if Plaintiff's constructive discharge claim is not procedurally barred, Plaintiff has failed to show that his transfer to the position of customer service representative resulted in his "constructive discharge" from the Defendant's employ. The record reflects that Plaintiff worked in this position for only two (2) days before going out on long-term sick leave. The South Carolina Retirement System subsequently approved Plaintiff's application for disability retirement effective March 3, 2003, and Plaintiff's retirement took effect that day. Plaintiff's Deposition, pp. 112-115. Plaintiff testified that his condition is permanently disabling, and that he has been awarded disability retirement benefits because of his medical condition. Plaintiff's Deposition, pp. 13-15, 164, 167. Plaintiff also testified that during those two days that he worked in the print shop, no one harassed him, discriminated against him or retaliated against him. Plaintiff Deposition, pp. 165-166.

28



Therefore, even if Plaintiff's constructive discharge claim is not procedurally barred, the evidence does not support Plaintiff's claim that the reason he quit in December 2002 was because of conduct of the Defendant amounting to a constructive discharge. <u>Garrett v. Hewlett Packard Co.</u>, 305 F.3d 1210, 1221 (10th Cir. 2002) ["Constructive discharge occurs 'when the employer . . . has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign'....The bar is quire high in such cases: a plaintiff must show he had no other choice but to quit."]; <u>Amaker v. Winn-Dixie, Greenville, Inc.</u>, 1995 WL 706873, at **1 (4th Cir. December 1, 1995); <u>EEOC v. Federal Reserve Bank of Richmond,</u> 698 F.2d 633, 672 (4th Cir.), <u>rev'd in part on unrelated grounds,</u> 467 U.S. 867 (1984)(emphasis added); <u>see</u> <u>Vitug v. Multistate Tax Comm'n</u>, 88 F.3d 506, 517-518 (7th Cir. 1996); <u>EEOC v. Clay Printing Co.</u>, 955 F.2d 936, 946 (4th Cir. 1992); <u>Diamond v. T. Rowe Price Associates, Inc.</u>, 852 F.Supp. 372, 397 n. 123 (D.Md. 1994); <u>Drake v. Minnesota Mining & Mfg. Co.</u>, 134 F.3d 878, 886 (7th Cir. 1998).<u>Drake v. Minnesota Mining & Mfg. Co.</u>, 134 F.3d 878, 886 (7th Cir. 1998); <u>Bristow v. Daily Press, Inc.</u>, 770 F.2d 1251, 1255 (4th Cir. 1985); <u>Blistein v. St. John's College</u>, 74 F.3d 1459, 1468 (4th Cir. 1996), <u>overruled in part on other grounds,</u> <u>Oubre v. Entergy Operations, Inc.</u>, 522 U.S. 422, 428 (1998); <u>see also</u> <u>Carter v. Ball</u>, 33 F.3d 450, 459 (4th Cir. 1994) ["dissatisfaction with work assignments, feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign."]; <u>Bristow</u>, 770 F.2d 1255 [employees are not guaranteed a working environment free of stress]. This claim should be dismissed.

### Conclusion

Based on the foregoing, it is recommended that Defendant's motion for summary judgment



be **granted**, and that this case be **dismissed**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina
July  27,  2005